*Hennen* for the plaintiffs, *Watts* for the defendant.

---

*SABATIER & AL vs. THEIR CREDITORS.*

APPEAL from the court of the parish and city of New-Orleans.

PORTER. J. delivered the opinion of the court. Brunetti the appellant, complains of the judgment rendered in the court below, which placed him on the tableau of distribution as a simple creditor—he contends that he is a privileged one.

The case presents two questions;

Any legal evidence may be offered in support of the confessions of an insolvent, that he owes one of the creditors in the *concurso*. The obligation of a contract is that which the law in force at the time of the contract obliges the parties to do or not to do.

VOL. VI. N. S.                 74

Eastern Dis.
*March*, 1828.

SABATIER &
AL,
*vs.*
THEIR CRE-
DITORS.

A law passed after a contract which would exempt all the property of the obligor from the payment of the debt, would be unconstitutional.

It would be equally so, if a portion was placed out of the reach of execution, provided the portion left was not sufficient to satisfy the debt.

The privilege on contracts of deposit entered into before the promulgation of the Louisiana code, is not affected by its provisions.

1st. Whether he is a creditor to the amount claimed by him.

And 2d. Whether he has a privity which authorises him to be paid in preference to chirographary creditors.

I. As the judgment of the court below recognized the debt, and the other creditors who oppose the appellant have not prayed for any amendment to it, that question would seem settled. But in this court it has been argued, that, though they have no objection to recognise him as a simple creditor, because they have no interest in contesting his claim on that ground, they are deeply concerned in disputing his claim to be paid in preference to others; and that in exercising the right to contest his privilege, they can put him on the proof of every fact necessary to establish it, among which the first and most important is, that he should shew the existence of the debt claimed by him.

Perhaps they have: at all events, as our opinion accords with that of the lower court as to the justice and reality of the claim, we find it necessary to examine whether, under the state of the case, the question is open for examination. It is true, as contended for by the appellees, that on a contest between creditors

in *juicio de concurso,* the notes or obligations of the insolvent do not make, in themselves, proof of the debt apparently due to them.— They must be supported by other evidence. What that other evidence must be, as was said by this court in the case of *Menendos* vs. *Lorionda's Syndics,* no author that we have been able to consult distinctly and positively states. But as the books declare they do make evidence, when supported by other circumstances, (*otros adminiculos*) the conclusion come to in the case just stated, appears to us still to be the correct one, namely; any legal evidence which will convince the minds of a court and jury of the fairness and justness of the claim. The evidence furnished in the case before us leaves not a doubt on our minds that the money was deposited as the appellant alleges, and we shall, therefore, proceed to examine whether he has a privilege for its payment: 3 *Martin,* 705; 12 *ibid,* 157; *Febrero, p.* 2, *lib.* 3, *cap.* 3, *no.* 34.

II. This question is much more difficult than that just disposed of. At the time the money was placed in deposit, the provision of our old code regulated contracts of this description, and as, by them, no change was made in

*Eastern Dist.*
*March,* 1828.

SABATIER & AL.
*vs.*
THEIR CREDITORS.

Eastern Dist.
March, 1828.

SABATIER &
AL.
vs.
THEIR CRE-
DITORS.

the ancient jurisprudence of the country, a privilege or right of preference existed on the irregular deposit. Since the contract was entered into, and before the failure of the insolvents, a change has been made in our law by which the privilege of the depositor is restrained to cases where the thing reclaimed is identically the same with that deposited: consequently, that arising from the irregular deposit, when the demand is not for the same thing, but for the same quantity of the thing placed in the hands of the depositary is established: *Civil Code*, 2934, 3189; 9 *Martin's Rep.* 470, *Durnford* vs. *Seghers' Syndics.*

By which of these laws should the right of the appellant be decided is the point presented for decision. If the privilege accorded by the law at the time of the contract, make a part of the rights flowing from the agreement, then the claim of privilege must be allowed. If, on the contrary, it is nothing but one of the remedies given to enforce the agreement, the control of them was within the legislative power, and the preference being abolished, the claimant must be put on the tableau as a simple creditor.

The distinction between rights and remedies is a subject of frequent discussion in courts,

and the repeated contests they give rise to, is a
sure proof how unsettled the doctrine is which governs them.    The constitution of the United States prohibits any of the particular states from passing laws which will impair the obli-gation of a contract    As the obligation here spoken of is the legal, and not the moral, ob-ligation, it would seem to follow, that the obli-gation of a contract *is that which the law in force at the time the contract is made, obliges the parties to do or not to do.* If this be true, the right of each is, to obtain a performance of every obligation arising out of the agree-ment at the period it was entered into. *The remedy is the means given by law to carry this right into effect.* The question, then, in every case of this kind, is, what are the obliga-tions of one of the parties, because the rights of the other are ever correspondent to, and co-extensive with, the duty imposed on the person with whom he stipulated.

Now, in the ordinary case of a promise to pay a certain sum of money on a particular day, the obligation of the contract is, that the debtor shall discharge the debt at the period fixed, or, that in default thereof, his property shall be responsible to satisfy his engagement.

Eastern Dis.
*March*, 1828

SABATIER &
AL.
*vs.*
THEIR CRE-
DITORS.

We are aware that a few have contended, that there is no implied obligation to make the property liable in a contract of the kind just mentioned; but we apprehend such a ground is quite untenable. Indeed, we do not see how it can be maintained without reducing the obligation from a legal to a moral one, since a right without a legal remedy ceases to be a legal right. If, by the contract, the property of the debtor did not become responsible, and was not, as between creditor and debtor, to be placed out of legislative controul, there would be scarcely any thing left for the prohibition in the constitution of the United States to act on. It cannot be believed the framers of it intended to guard against the states passing laws, which might add to, or take from, the amount to be paid, and change the time of performance, and leave them a power which would enable them to say, the debtor should be enirely released, both in person and property, from his engagement.

In the case of *Sturges* vs. *Crowninshield* in the supreme court of the United States, it was admitted in argument, that all the present property of the debtor was responsible to the creditor; but it was urged that the obligation

did not go so far as to make future acquisitions subject to it. The court, however, said, that both present and future were, and to release the latter from liability impaired the obligation. In the case of *Green* vs. *Biddle*, they declared that any law introducing a deviation from the terms of the contract, by postponing or accelerating the period of performance, imposing conditions not expressed in the contract, or dispensing with those that were, violated its obligation: 4, *Wheaton* 122; 8, *Wheaton* 1.

Eastern Dist.
*March*, 1828.

SABATIER &
AL.
*vs.*
THEIR CRE-
TORS.

We take it, therefore, as clear, that in the case put of an ordinary obligation to pay money, a law passed subsequent to the contract which would exempt all a man's property from the payment of the debt wonld be unconstitutional; and that it would be equally so if a par- of it was placed out of the reach of execution, provided, the portion left liable was not sufficient to satisfy the debt.

If it be true, then, that on the implied oblit gation of the property being liable for the engagements of the debtor, the legislature cannot deprive the creditor of recourse on it: it would seem still clearer, they cannot interfere with a special contract by which the debtor makes a part of his property liable in the first

Eastern Dist.
March, 1828.

SABATIER
AL.
vs.
THEIR CRE-
DITORS.

instance for it. Because, if the law sanctions at all such an agreement, the creditor acquires by the stipulation, a right to the thing, which no subsequent legislative act can take from him, without changing, or in case of insolvency, weakening, and, perhaps, entirely destroying, his claim. Such would be the consequence in the common case of a conventional mortgage. The mortgagee lends his money because the law allows him to take security for his debt by obtaining a special lien on some part of the borrower's property. The security makes as much a part of the mortgagor's obligation and the mortgagee's right, as the promise to pay the money does, and future laws can no more deprive him of the one than the other. If, instead of taking real recurity, he obtained personal, by getting another to join his debtor in the bond, it would not be pretended that a subsequent act of the legislature, by declaring that there should be no such contract, as that of security enforced in our law could discharge the co-obligor. And if the personal security could not be taken away, how can the real: they have both the same object; they are both permitted by the law; and they are both of equal importance to the creditor,

who has trusted to them as a means of assu-Eastern Dist.<br>March, 1828,ring the re-payment of the money he lent onSABATIER &<br>AL.<br>vs.<br>THEIR CRE-<br>DITORS.the faith of them.

In what respect the contract of deposit now before the court can be distinguished from that of mortgage in relation to the present question, we are unable to perceive; except, that in the former, the law gave a privilege to the depositor on all the property of the depositary, the moment the contract was made: in the latter, ~~there~~ required an express stipulation. But every principle that prevents legislative interference with the one forbids it with the other.

As to the argument, that creditors, subsequent to the repeal of the law, are not bound by the contracts made previously by their debtor, we understand it to be perfectly well established that they are bound by them. In many cases, the legislature have required, that acts which give a preference should be registered to make them have effect against third parties, but when this formality is not required, and the law declares the creditor shall have a privilege, it is as binding on others as on the debtor himself.

There have been some cases brought before the tribunals of France, which bear a

Eastern Dist
*March*, 1828.

SABATIER
& AL.
*vs.*
THEIR CRE-
DITORS.

close, if not a perfect analogy to that before the court, and they are more worthy of attention, because they were decided on general principles of law, without any special clause in the constitution of that country such as ours contains.

They arose on the 2161st article of the Napoleon code, which declares, that when the debtor has given a general mortgage on his present and future property, and the objects hypothecated amount to more than was necessary to secure the debt, the debtor has an action to reduce the mortgage to such portion of the property as will be sufficient to secure and satisfy the sum due.

By the laws of France previous to the adoption of the Napoleon Code, no such power was vested in the mortgagor, and soon after its passage, a question was presented to their tribunals, whether a mortgage given under the ancient law could be reduced under the new.— Two of the appellate tribunals to whom such a case was precented, decided in the negative: they held, that the right to make the whole of the property responsible existed by the original contract, and that the new law could not change it without giving to that law a retroactive effect.

Eastern Dist.
*March*, 1828.

SABATIER &
AL.
*vs.*
THEIR CRE-
DITORS.

Two other courts of equal dignity held they might, but their decisions have not escaped severe animadversion. However, the principles on which they decided, strongly support the conclusion we have come to in the case.— They considered, that so long as the law left enough of property hypothecated to secure the payment of the debt, it could, for public convenience, unlock the surplus from the lien imposed on it, and that, by such regulation, the right of the creditor was not touched; it was only a change made in the property on which it might be enforced: *Pothier's traite des Hypoth. vol.* 2, *ed.* 1809, *p.* 171 & 198; *Questions transitoires sur le Code Napoleon, vol* 2, *p.* 47 *to* 59.

The legislation of the 2118th article of the Code Napoleon, declares, that mortgages can be only given on immoveable property and their accessories. By another article of the same work, (529) rents of land were declared to be moveable. The effect of these provisions was to abolish the right which had existed under their former law, of taking mortgages *sur des rentes foncieres.*

At the time this change was made in their law, there existed a great number of mortga-

Eastern Dist ges, which, previously to the adoption of the
*March,*1828.
Napoleon Code, had been given on debts of
SABATIER & this kind.    Questions, we perceive, have been
AL.
*vs.*
THEIR CRE- raised, whether it was not necessary these
DITORS.
mortgages should be registered pursuant to the
new law, but not a doubt is expressed as to
their validity: *Questions transitoires sur le
Code Nap.* 68 & 73,

The question presented in this case renders
it unnecessary to examine to what extent the

*controul* legislative power to ~~contract~~ remedies may be
carried.    In many instances that power may
impair the creditor's right.    The terms of the
courts may be placed at such a great interval
of time, that before the creditor can obtain
judgment, the debtor has wasted all his proper-
ty.    Execution may be required to be levied
on some description of goods before others can
be seized, and the collection of the debt in this
way delayed.    The power of arrest on mesne
process may be abolished, as may be that of
imprisonment after judgment.    But these are
inconveniences incidental to the authority ne-
cessarily vested in the legislature to regulate
the proceedings of courts and its constitution-
ality is undoubted. It is sufficient, in the present
case, to say, that in the exercise of this power,

they cannot turn a legal obligation into a moral one, nor change a privileged into a chirographary creditor.

Eastern Dist
*March*, 1828·

SABATIER &
AL.
*vs*
THEIR CRE-
DITORS.

It is therefore ordered, adjudged and decreed, that the judgment of the parish court be annulled, avoided and reversed,—that the appellant be placed on the tableau of distribution as a privileged creditor, according to the rank he is entitled to, in reference to others holding privilege on the estate: and it is further ordered, that the appellee pay the costs of this appeal.

*Workman* for the plaintiff, *Mazureau* for the defendant.